

KM

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **VENKY VENKATRAMAN,** | § | |
| *Plaintiff,* | § | |
| | § | 3-25CV1335-X |
| **v.** | § | |
| | § | |
| **SAKSHI VENKATRAMAN &** | § | |
| **SMRITHI VENKATRAMAN,** | § | |
| *Jointly and Severally Liable* | § | |
| *Defendants.* | § | |

## PLAINTIFF'S COMPLAINT

Plaintiff, complaining of the Defendants, alleges and says:

**PARTIES**

1.    Plaintiff VENKY VENKATRAMAN is a resident of Texas.

2.    Defendant SAKSHI VENKATRAMAN is a resident of New York.

3.    Defendant SMRITHI VENKATRAMAN is a resident of New Jersey.

**JURISDICTION AND VENUE**

4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332,

as there is complete diversity of citizenship between the parties and the amount in controversy

exceeds $75,000.

5.    This Court has personal jurisdiction over Defendant SAKSHI VENKATRAMAN since

Defendant has sufficient "minimum contacts" with Texas, and the exercise of jurisdiction

complies with the Due Process Clause of the Fourteenth Amendment.

6.      This Court has personal jurisdiction over Defendant SMRITHI VENKATRAMAN
Defendant has sufficient "minimum contacts" with Texas, and the exercise of jurisdiction
complies with the Due Process Clause of the Fourteenth Amendment.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as a substantial part of the
events or omissions giving rise to the claim occurred in the Northern District of Texas.

**SUMMONS**

On acceptance of this filing, Plaintiff requests the Court to issue summonses for
Defendants SAKSHI VENKATRAMAN and SMRITHI VENKATRAMAN.

**STATEMENT OF FACTS RELATED TO SAKSHI VENKATRAMAN**

1.  Sakshi is Plaintiff's older daughter.  Ever since Sakshi was born on January 1999,
    Plaintiff, who had waited long to become a father, treated her like a princess, showering
    her with love and gifts.  After his divorce from Sakshi's mother in 2005, Plaintiff (who
    received Joint Custody and Expanded Standard Possession), did his best to take care of
    Sakshi and her younger sister, Smrithi.  He was fully involved in her life, including but
    not limited to participating in school activities like coaching her Destination Imagination
    team, teaching her to play tennis, taking her on trips within and outside the US,
    encouraging her to write in his blog, etc, despite juggling his work and other
    responsibilities.

2.  On July 12, 2013, Sakshi and her sister were suddenly removed from Plaintiff's home
    based on a Temporary Restraining Order filed by their mother where she made false
    allegations of abuse against Plaintiff in an attached Affidavit, right before they were
    supposed to travel to New York for sightseeing and then to India to visit Plaintiff's
    terminally ill mother.  Just before she left Plaintiff's home along with her mother (with

2

Plaintiff still held up in court with the bailiff as instructed by the judge), Sakshi sent some heartfelt texts to Plaintiff where she said "I love you so much…I am leaving you a note with the garage door opener" (which she did) and in the note she said "I love you so much. I hope you know that… I love you always never forget that."

3. Subsequently Plaintiff left for India on his own to visit his mother who got progressively worse and eventually passed away on October 9, 2013, without seeing her beloved granddaughters who she had helped Plaintiff raise when they were really young. When Plaintiff returned to the US and tried to reach out to his daughters, he found that their attitude towards him had completely changed and they no longer wanted to see him, leave alone coming to live with him again. Sakshi had blocked him on Facebook (an account Plaintiff had set up for her when she was very young) and on Twitter as well.

4. To try and resolve matters through the court system, Plaintiff gave up a well-paying career in Information Technology management, went to law school at the age of 57 and got a law degree at the age of 61. He became progressively more familiar with the judicial system and fought to bring his daughters back home but to no avail. The courts compelled him to attend family reunification counseling, which he did along with Sakshi and her sister with various counselors spending thousands of dollars but they could not be persuaded to reconnect with Plaintiff

5. Plaintiff then learned from some relatives that Sakshi was saying that she had no relationship with him. She also cut herself off with all of Plaintiff's family members, especially anyone who mentioned Plaintiff in any way. She refused to attend weddings of cousins even via Zoom in order not be seen on the same screen as Plaintiff. As time went by, Plaintiff came to know that Sakshi was painting a very bleak picture of her

childhood with Plaintiff alleging she never had a single happy memory of her childhood with Plaintiff despite there being thousands of photographs and hundreds of hours of video which would prove to the contrary.

6. Sakshi went on to study journalism at NYU and after graduation from NYU, joined NBC News.  In July of 2023, Sakshi was interviewed by a journalism student at NYU where she falsely told the interviewer that she had been abused during childhood by Plaintiff. Reading this caused Plaintiff great emotional distress since the truth was the exact opposite which is he had treated Sakshi like a jewel from since she was born and did his best to be the best father he could be when he was managing as a single father.  These allegations were republished in 2024 in KeyWiki.  Plaintiff is pretty certain that Sakshi had made similar derogatory statements about him to other people as well.

**STATEMENT OF FACTS RELATED TO SMRITHI VENKATRAMAN**

7. Smrithi is Plaintiff's younger daughter.  Ever since Smrithi was born on September 2001, Plaintiff, treated her like a princess, showering her with love and gifts, just as he did with his older daughter, Sakshi.  After his divorce from Smrithi's mother in 2005, Plaintiff (who received Joint Custody and Expanded Standard Possession) did his best to take care of Smrithi and Sakshi.  Despite juggling his work and other responsibilities, he was fully involved in her life, including but not limited to participating in school activities, teaching her to play tennis, taking her on trips within and outside the US, etc.

8. On July 12, 2013, Smrithi and her sister were suddenly removed from Plaintiff's home based on a Temporary Restraining Order filed by their mother (where she made false allegations of abuse against Plaintiff in an attached Affidavit) right before they were supposed to travel to New York along with Plaintiff for sightseeing and then to India to

visit Plaintiff's terminally ill mother. Just before she left Plaintiff's home along with her mother (with Plaintiff still held up in court with the bailiff as instructed by the judge), Smrithi left a note saying "I love you" which her sister had tossed into the backyard along with the garage door opener.

9. Subsequently Plaintiff left for India on his own to visit his mother who got progressively worse and eventually passed away on October 9, 2013, without seeing her beloved granddaughters who she had helped Plaintiff raise when they were really young. When Plaintiff returned to the US and tried to reach out to his daughters, he found that their attitude towards him had completely changed and they no longer wanted to see him, leave alone coming to live with him again.

10. As previously stated, to try and resolve matters through the court system, Plaintiff gave up a well-paying career in Information Technology management, went to law school at the age of 57 and got a law degree at the age of 61. He became progressively more familiar with the judicial system and fought to bring his daughters back home but to no avail. The courts compelled him to attend family reunification counseling which he did along with Smrithi and her sister with various counselors spending thousands of dollars but they could not be persuaded to reconnect with Plaintiff.

11. A few years ago, Plaintiff learned from a Defendant in another case that Smrithi had told her that she had been "abused" by Plaintiff. He also learned from a relative that Smrithi was saying that Plaintiff had "abused" her mother, when they were married and living together (1998-2004) due to which Smrithi did not want to have any relationship with Plaintiff. Smrithi continued to repeat the same even as recently as this year. Smrithi was less than 3 years old when Plaintiff and her mother separated and so there is no way

Smrithi would have personally known about any "abuse" of her mother, even if it was true which it most certainly was not, and her mother had made no such claim during the contentious divorce proceedings which took place in 2004-2005 when she had every opportunity and motivation to do so. This behavior of Smrithi of making false allegations of "abuse" to various people was very hurtful to Plaintiff. Smrithi also cut herself off from all of Plaintiff's family members, especially anyone who mentioned Plaintiff in any positive way. She refused to attend weddings of cousins even via Zoom in order not to be seen on the same screen as Plaintiff. As time went by, Plaintiff came to know that Smrithi was painting a very bleak picture of her childhood with Plaintiff despite there being thousands of photographs and hundreds of hours of video which would prove to the contrary.

12. Smrithi went on to study applied psychology at NYU in 2020 and is currently doing post graduate work at Rutgers University in New Jersey. She left for New York in 2020 without informing Plaintiff, blocked Plaintiff's phone number, and hangs up on Plaintiff whenever he tried to reach her using other phone numbers. This has caused Plaintiff great emotional distress since he had treated Smrithi like a jewel from when she was born and he had done his utmost to be the best father he could be when he was managing as a single father. Further, Plaintiff has evidence that Smrithi had made derogatory statements about him to several people, most likely at the behest of her mother and Sakshi who have thoroughly alienated Smrithi against Plaintiff.

**CLAIMS FOR RELIEF**

**Count I - Defamation**

(against Defendant SAKSHI VENKATRAMAN)

13.    Plaintiff repeats and realleges the allegations set forth in the above paragraphs as if fully set forth herein.

14.    Defendant SAKSHI VENKATRAMAN published false statements of fact to a third party as described in the facts stated above.

16.    The statements were defamatory concerning the plaintiff as described in the facts stated above.

18.    Defendant SAKSHI VENKATRAMAN acted with the requisite degree of fault regarding the truth of the statements as described in the facts stated above.

20.    The statement caused damages to Plaintiff as he gave up a lucrative career in Information Technology to go to law school in order to deal with his legal situation.

**Count II - Intentional Infliction of Emotional Distress**

(against all Defendants)

22.    Plaintiff repeats and realleges the allegations set forth in the above paragraphs as if fully set forth herein.

23.    Defendants acted intentionally or recklessly as described in the facts stated above.

25.    Defendants' conduct was extreme and outrageous as described in the facts stated above.

27.    The actions of Defendants caused the plaintiff emotional distress as described in the facts stated above.

29.    The emotional distress suffered by the plaintiff was severe as described in the facts stated above.

**Count III - Civil Conspiracy**

(against all Defendants)

31.     Plaintiff repeats and realleges the allegations set forth in the above paragraphs as if fully set forth herein.

32.     Defendants are two or more persons who entered into an agreement as described in the facts stated above.

34.     Defendants had an object to be accomplished through their agreement as described in the facts stated above.

36.     Defendants had a meeting of minds on the object or course of action as described in the facts stated above.

38.     Defendants committed one or more unlawful, overt acts in furtherance of their agreement as described in the facts stated above.

40.     Plaintiff suffered damages as a proximate result of Defendants' unlawful acts which were loss of income due to having to change careers late in life and emotional distress.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. For compensatory damages against all Defendants in an amount to be proven at trial;

B. For punitive damages against all Defendants pursuant to Sec. 41.003. Standards for Recovery of Exemplary Damages.;

C. For injunctive relief prohibiting Defendants from engaging in further defamatory, extreme and outrageous, or conspiratorial conduct;

D. For pre-judgment and post-judgment interest as allowed by law; and

F. For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

PLAINTIFF'S COMPLAINT

8

Respectfully submitted,

Venky Venkatraman, Pro Se
415 Gifford Drive
Coppell, TX 75019
Tel: (469) 766-2875
Fax: (972) 535-4765
Email: venky@att.net

By:  /s/ Venky Venkatraman
        Venky Venkatraman